# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Emma Simon, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MULVADI CORPORATION,<br><br>Defendant. | C.A. NO. 2:26-cv-380-RJC<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS


**NATURE OF THE ACTION** ........ **1**

**PARTIES** ........ **5**

**JURISDICTION AND VENUE** ........ **7**

**FACTS** ........ **8**

A. THE MARKET FOR KONA COFFEE ........ 8
B. COFFEE TESTING ........ 11
C. DEFENDANT'S PRODUCTS ........ 15
D. DEFENDANT'S $7.75MM SETTLEMENT ........ 19
E. THE PRODUCT IS MISBRANDED. ........ 19
F. REASONABLE CONSUMERS RELIED ON DEFENDANT'S MISREPRESENTATIONS TO THEIR DETRIMENT. ........ 21
G. DEFENDANT'S WRONGFUL CONDUCT CAUSED PLAINTIFF'S AND THE CLASS MEMBERS' INJURIES. ........ 22

**CLASS DEFINITIONS AND ALLEGATIONS** ........ **25**

**CAUSES OF ACTION** ........ **28**

COUNT I: VIOLATION OF THE UTPCPL ........ 28
COUNT II: BREACH OF EXPRESS WARRANTY ........ 30
COUNT III: UNJUST ENRICHMENT ........ 32

**RELIEF DEMANDED** ........ **32**

**JURY DEMAND** ........ **33**

Plaintiff Emma Simon brings this action on behalf of herself and all others similarly situated ("Class Members") against Defendant Mulvadi Corporation ("Mulvadi"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its "100% Kona" coffee (the "Product").

2. Defendant manufactures, sells, and distributes the Product using a marketing and advertising campaign focused on claims that appeal to consumers seeking true Kona coffee.

3. Defendant engages in a deceptive marketing campaign to convince consumers that the Product contains exclusively Kona coffee  represented in the marketing[1] and on the labeling[2] of the Product.

4. Notably, the Product's packaging prominently features "100% KONA COFFEE" on the principal display panel.

---

[1] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Product labels, viral marketing, incentives, and websites.
[2] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.




5. Additionally, the Product contains a seal at the top that highlights that it contains "100% Kona Coffee."



6. The "100% Kona" representations are repeated throughout Defendant's marketing of the Product on its website and other locations where it sells the Product.




7. The deception lies in the fact that the Product contains, *at best*, trace amounts of true Kona coffee. Rather than containing exclusively real Kona coffee, the Product is primarily composed of low-quality, generic coffee beans which do not originate from Kona.

8. Thus, although Defendant markets the Product as containing exclusively real Kona coffee, it is devoid of the quality reasonable consumers expect with consuming real Kona coffee.

9. Reasonable consumers purchased the Product believing, among other things, that it was accurately represented. Specifically, reasonable consumers believed that the Product contained exclusively real Kona coffee. Reasonable consumers would not have purchased the Product if they had known about the

misrepresentations and omissions, or would have purchased them on different terms.

10. Defendant violated the trust of Plaintiff and Class Members because the Product does not contain exclusively Kona coffee that its marketing and labeling represents.

11. Defendant's misrepresentations have harmed both producers of real Kona coffee as well as consumers.

12. In 2019, Defendant was sued by a class of Kona coffee farmers because they were harmed by Defendant's false representations that the Products were real Kona coffee.

13. In July 2023, after class certification was granted, Defendant settled with the Kona coffee farmers for $7.75MM.[3]

14. Defendant has paid for some of its harm, but it has failed to satisfy all harmed parties from its unlawful, deceptive, and fraudulent conduct.

15. In other words, Defendant's settlement may have cured approximately 700 injured parties, but it failed to compensated the millions of consumers harmed by the same conduct.

16. This action seeks relief for Plaintiff and the millions of consumers that were similarly deceived by Defendant's conduct.

[3] *Corker v. Costco*, 2:19-cv-00290-RSL (W.D. Wash. 2020) (ECF No. 872).

17. Further, despite agreeing to change its deceptive marketing practices concerning its "100% Kona" products when it settled with the Kona farmers, Defendant continues to deceive consumers to this date.

18. Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a National Class and a Pennsylvania Subclass. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's deceptive conduct in the labeling and marketing of the Product.

## PARTIES

19. Plaintiff is a resident of Allegheny County, Pennsylvania. Plaintiff purchased Defendant's Product within the preceding two years from retailers located in this District or shipped from retailer into this District because she saw the Product labeling that stated "100% KONA COFFEE." Most recently, Plaintiff purchased Defendant's "100% KONA COFFEE" directly from Defendant for $35.99 in October 2025. Plaintiff relied on Defendant's false, misleading, and deceptive "100% KONA" representation about the Product to believe that the Product was made exclusively with Kona coffee. Had Plaintiff known the truth – that the Kona representation relied upon in making the purchase was false, misleading, and deceptive – Plaintiff would not have purchased the Product at a premium price. If the Product were reformulated such that the coffee came exclusively from Kona, or

the Products were not deceptively labeled, Plaintiff would purchase the Product again in the future. Plaintiff brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

20. Defendant Mulvadi Corporation is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.

a. Defendant sells its coffee products throughout the United States, including this District, through both its own online store, and various retail outlets, including but not limited to Costco, Amazon, Walmart, T.J. Maxx and Marshalls. Defendant falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging while claiming that the Product exclusively contains "100% KONA COFFEE."

b. From March 2020 through the present, Defendant has consistently sold and continues to sell the Products for approximately $35 to $40 per pound.

21. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

22. Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors,

employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

23. This Court has personal jurisdiction over the Defendant because the Defendant intentionally avails itself of the markets within Pennsylvania through the promotion, sale, marketing and distribution of its Products in Pennsylvania, which renders the exercise of jurisdiction by this Court proper and necessary.

24. This Court has subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs. In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

25. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTS

### A. The Market for Kona Coffee

26. Kona coffee is one of the rarest and most prized coffees in the world. It is renowned for its distinctive flavor and aroma and is one of the most famous and revered specialty coffees in the world.

27. In fact, for almost two hundred years it has been known as the best coffee and "not surpassed by any in the world."[4]

28. But only coffee grown on farms located within the Kona District of the Big Island of Hawaii can be truthfully marketed, labeled, and sold as Kona coffee. The volcanic soil, the elevation, and the humidity of this region combine to give Kona coffee its distinctive characteristics. The term "Kona" tells consumers their coffee comes from this distinctive geographic region.

29. Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District").[5] The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.

30. Only coffee grown in the Kona District can be sold as Kona coffee. Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee.

---

[4] Simon Brown, *The Sandwich Islands*, NEW ENGLAND FARMER, Aug. 27, 1853, at 1.
[5] *See* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of Hawaii Tax Map").

31. Kona coffee has been grown in the Kona District since 1828. The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics. Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

32. The Kona name tells consumers that they are buying coffee grown in the Kona District. The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of the highest quality. Consequently, consumers have been willing to pay a premium for Kona coffee.

33. Within the Kona District, less than 1,000 farmers grow Kona coffee beans. The typical Kona farmer cultivates no more than five acres, which is a very small farming operation that allows for careful cultivation. These farms typically operate as family businesses.

34. Kona farmers produce approximately 2.7 million pounds of green Kona coffee each year. That compares to 20 *billion* pounds of green coffee produced worldwide. In other words, authentic Kona coffee represents approximately 0.0135% of worldwide coffee production.

35. Kona coffee is rarer than premium products in other industries. For example, Ferrari represents 0.0165% of annual worldwide automobile sales.[6]

[6] In 2022, Ferrari sold 13,221 units compared to 80.2 million total automobile sales worldwide.

36. Kona coffee is a premium product. As a result, consumers are willing to pay, and have paid, a premium for products that claim to be Kona coffee over products that do not claim to be Kona coffee.

37. To take advantage of consumer's desire and willingness to pay a price premium for Kona coffee, Defendant sells packaged coffee products that are presented to consumers as Kona coffee but actually contain cheap commodity coffee beans.

38. The immense value of Kona coffee leads unscrupulous companies like Defendant to sell low quality non-Kona coffee as true Kona coffee because the general public cannot identify that they've been deceived until the coffee is brewed.[7]

39. The cultivation, production, and distribution of Kona coffee is labor intensive and includes many steps before it lands in the hands of a consumer.[8]

---

[7] *See, e.g.,* Les Drent, *Final Chapter Written In The Kona Kai Coffee Scanda*l, COFFEE TIMES (Spring 2001), https://coffeetimes.com/blogs/kona-coffee/final-chapter-written-in-the-kona-kai-coffee-scandal; Hawaii Now News, K*ona woman allegedly earned millions from fake '100% Kona' coffee beans*, https://www.hawaiinewsnow.com/2025/10/02/kona-woman-charged-after-making-millions-fake-kona-coffee-beans/.

[8] Lesley Harvey and Peter Adler, PhD, Fi*nal Report on the Economic Study on Changes in Coffee Labeling Law as required by Act 222* (2023).




40. The present wholesale price of authentic Kona coffee ranges from $50 to $60 per pound.

**B. Coffee Testing**

41. Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii. That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes. And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the Pacific Ocean.

42. As a result of the local soil and rainfall, certain elements are present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains Kona coffee beans, these elements tend to be present in high concentrations. If these elements are not present in high concentrations, then the package is unlikely to contain Kona coffee.

43. Moreover, as a direct result of the local soil and rainfall, certain elements are not present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains only Kona coffee beans, then these elements tend not to be present in high concentrations. If they are present in high concentrations, then the package is unlikely to contain Kona coffee.

44. Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are not found in Kona coffee beans. By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

45. In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the ratio of the concentrations of pairs of elements. The reason for this approach is simple. If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in the sample, but you would burn away more of the overall coffee bean. The concentration of barium would therefore increase, since it is defined as the mass of barium divided by the mass of the total bean. And the concentration of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean. But the ratio of the concentration of barium to the concentration of nickel would be unchanged. And since the lab does not know how long particular coffee samples were roasted by the Defendant, the scientists focus on measures that do not change with roasting.

46. Having tested barium and nickel, scientists have determined that authentic Kona coffee has a ratio of the concentration of barium to the concentration of nickel, also called the relative concentration, that falls within a certain range. If an unknown sample has a relative concentration within that range, it may or may not be Kona. But if an unknown sample has a relative concentration clearly outside that range, it is highly unlikely to be Kona.

47. Determining the concentrations of particular elements and isotopes (which are simply variations of a particular element) is a process that requires significant scientific expertise and expensive instrumentation. The scientific techniques of elemental analysis and isotopic analysis1 are widely accepted in the scientific community, and have been used in studies of various food products (including coffee). Unfortunately, these tests are very expensive. For that reason, Plaintiff and Class Members have never before had access to this kind of evidence.

48. Defendant is a sophisticated participant in the premium coffee marketplace. On information and belief, Defendant employs professional coffee buyers whose job function is to source coffees for their products. In other words, much like a professional automobile mechanic could never plausibly claim to be confused about the difference between a Ferrari and a Honda, Defendant cannot plausibly claim to be confused about the coffee they are procuring. The Defendant and its buyers know exactly what they are buying and what they are selling.

49. A scientist can calculate the ratio between the concentration of strontium (Sr), and the concentration of zinc (Zn).

50. For authentic Kona coffee, that ratio falls within a narrow range.

51. A scientist can similarly calculate the ratio between the concentration of barium (Ba), and the concentration of nickel (Ni).

52. For authentic Kona coffee, that ratio also falls within a narrow range.

53. Those two ratios can be plotted on a scatter plot, creating a visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee.

54. The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee.

55. The red diamonds show the observed ratios from the coffee products sold by Defendant.

56. Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendant's designation of the origin of its coffee products as Kona is false.

57. Additionally, a scientist can also calculate the ratio between the concentration of cobalt (Co), and the concentration of zinc (Zn).

58. For authentic Kona, that ratio falls within a narrow range.

59. A scientist can calculate the ratio between the concentration of manganese (Mn), and the concentration of nickel (Ni).

60. For authentic Kona, that ratio also falls within a narrow range.

61. As with the earlier ratios, those two ratios can be plotted on a scatter plot, creating another visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee.

62. The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee.

63. The red diamonds show the observed ratios from the coffee products sold by Defendant.

64. Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendant's designation of Kona as the origin of its coffee products is false.

**C. Defendant's Products**

65. Defendant capitalizes on the consumer's demand for Kona coffee and generate increased unit sales, revenue, and profit by making Kona representations.

66. Consumers rely on label representations and information in making purchasing decisions.

67. Knowing this, Defendant prominently features Kona representations on its packaging. Below is a representative image of Defendant's deceptive "100% KONA" coffee products.




68. Additionally, descriptions on Defendant's website make additional claims that the Product is "100% KONA."




69. Based on the representations that appear in the marketing and on the packaging of the Product, Plaintiff reasonably believed that the Product was made exclusively with Kona coffee.

70. Defendant falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of "100% KONA" on the front of the packaging. On its online store, Defendant describes its "100% KONA COFFEE" as "one of the most prized coffees in the world." The deceptive marketing is designed to mislead consumers into believing that Defendant's Products contain coffee exclusively from the Kona District, when the coffee products actually do not exclusively contain Kona coffee.

71. Defendant deliberately misleads consumers like Plaintiff into believing that Products contain exclusively premium Kona coffee beans in order to justify the high price Defendant charges for what is actually ordinary commodity coffee.

72. Taken as a whole, the words and images used on Defendant's packaging leads consumers to believe that the Product exclusively contains Kona coffee.

73. In 2019, testing confirmed that Defendant falsely represented that the its "100% Kona" products contained exclusively Kona coffee, and it was the belief of the scientist that conducted the test that the coffee may not contain any coffee from Kona let alone 100%.

74. Specifically, the testing showed that the strontium-to-zinc ratio and the barium-to-nickel ratio, of the Mulvadi products (marked by red diamonds) were well outside the range of authentic Kona.




75. Similarly, the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforced the same conclusion.




76. The testing showed that Defendant's "100% Kona" products contained trace amount of Kona coffee *at best*.

77. Not only are consumers misled but also competing products are placed at a competitive disadvantage. Competing companies that accurately represent

their products are harmed Defendant diverts attention and dollars away from competitors that are good faith market participants.

**D. Defendant's $7.75MM Settlement**

78. In addition to harming consumers, Defendant harms producers and sellers of legitimate Kona coffee.

79. In 2019, Defendant was sued by a class of Kona coffee farmers because they were harmed by Defendant's false representations that the Products were Kona coffee.

80. On July 6, 2023, after class certification was granted, Defendant settled with the Kona coffee farmers for $7.75MM.[9]

81. Defendant has paid for some of its harm, but it has failed to satisfy all harmed parties from its unlawful, deceptive, and fraudulent conduct.

82. In other words, Defendant's settlement may have cured approximately 700 injured Kona farmers while leaving millions of other injured consumers without any compensation for their damages.

83. Despite agreeing to change its practices concerning the "100% Kona" products in its 2023 settlement with the Kona farmers, Defendant did not change its practices and continues to deceive consumers to this date.

**E. The Product is misbranded.**

84. Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading." *See* 21 U.S.C. §§ 343(a).

[9] *Corker*, 2:19-cv-00290-RSL (ECF No. 872).

85. The Kona representation on the Product has a material bearing on price and consumer acceptance.

86. Because the Defendant fails to reveal the basic nature and characterizing properties of the Product, Defendant's Product is not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331. Pennsylvania's Food Safety Act states: "All regulations and supplements thereto or revisions thereof adopted under the Federal acts which relate to food on, before or after the effective date of this subchapter are adopted as regulations in this Commonwealth." 3 Pa. Stat. and Cons. Stat. Ann. § 5733.

87. Additionally, the Food Safety Act mandates that all regulations thereunder, must "be construed in a manner that is consistent with the Federal acts and regulations promulgated under those acts." 3 Pa. Stat. and Cons. Stat. Ann. § 5736. Specifically, "food standards and labeling requirements" must be consistent with Federal regulations. *Id.*

88. By misrepresenting the basic nature and characterizing properties of the Product, Defendant violates these federal and state regulations and misleads Plaintiff and Class Members alike.

89. To be clear, Plaintiff does not allege any claims pursuant to the FDCA and Pennsylvania's Food Safety Act and relies on these regulations only to the

extent they provide a predicate basis for liability under state and common law, as set forth herein.

### F. Reasonable consumers relied on Defendant's misrepresentations to their detriment.

90. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

91. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.


Not the greatest roast
Reviewed in the United States on July 2, 2022
Verified Purchase
Wouldn't recommend, burnt smell, not a great taste. Very little flavor. Does not taste like true Kona coffee
Helpful | Report

Putrid
Reviewed in the United States on September 6, 2022
Verified Purchase
The smell was absolutely disgusting and the taste is deplorable. I actually had to throw my French press in the dishwasher, because the putrid odor ruined the next 2 batches of Starbucks that I brewed. For $33 dollars, I could have placed my money in the trash. At least then, someone else could have benefited from it. Complete waste.
2 people found this helpful
Helpful | Report

Be forewarned
Reviewed in the United States on October 5, 2022
Verified Purchase
I've had 100% Kona coffee, and this isn't it. This is the kind of stuff you get inside of a Chock Full o' Nuts can. Absolutely putrid. Don't waste your money on this brand...
One person found this helpful
Helpful | Report

92. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

**G. Defendant's wrongful conduct caused Plaintiff's and the Class Members' injuries.**

93. Defendant knows that consumers are willing to pay more for Kona coffee due to the perception that its quality and taste is a superior alternative to the competition.

94. As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Product that it would not have otherwise earned. Plaintiff and Class Members paid money for coffee that is not what it was purported to be or what consumers bargained for. Plaintiff and Class Members paid a premium for the Product when they could have instead bought other, less expensive products that do not purport to be Kona coffee.

95. In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a Product labeled and advertised as being Kona coffee.

96. As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. Could not be used for the purpose for which they were purchased; and

f. Were of a different quality than what Defendant promised.

97. Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

98. Plaintiff and the Class Members paid for Products that were purported to consist exclusively of Kona coffee but instead received Products that contained, at best, trace amounts of Kona coffee. The products Plaintiff and the Class Members received were worth less than the products for which they paid.

99. Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

100. Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

101. Any applicable statute of limitations has been tolled by Defendant's false representations concerning the composition and quality of the Products, and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and Class Members were deceived regarding the Products and could not have reasonably discovered that the Products did not conform to the Defendant's representations.

102. Plaintiff and Class Members did not discover and did not know of any facts that would have caused a reasonable person to expect that the Defendant was concealing the performance and efficacy of the Products. As alleged herein, the source of the coffee was material to Plaintiff and Class Members at all relevant times. Within the time period of any applicable statute of limitations, Plaintiff and Members of the Class would not have discovered through the existence of reasonable diligence that the Products were falsely designated.

103. Plaintiff and Class Members did not know and could not have known about their causes of action because, even assuming general awareness of the sales of fake Kona coffee, it is impossible to know that a particular defendant has sold such coffee without either (1) extensive and expensive chemical analysis of the coffee itself that very few laboratories can perform and which Plaintiff and the Class Members likely cannot afford to pay for on their own, or (2) documents and information in the exclusive possession of the defendant. Reasonable and diligent investigation did not and could not reveal a factual basis for the claims alleged in

this complaint prior to the investigation and extensive scientific testing that led to the Complaint itself.

104. At all times, Defendant is and was under a continuous duty to disclose to Plaintiff and the Classes the true standard, quality, and grade of the Products.

105. Defendant knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiff and Class Members reasonably relied on Defendant's knowing, active, and affirmative concealment.

106. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statues of limitations in defense of this action.

## CLASS DEFINITIONS AND ALLEGATIONS

107. Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

> **National Class:** All persons in the United States who purchased the Products from March 9, 2022 through present.
>
> **Pennsylvania Subclass:** All persons in the Commonwealth of Pennsylvania who purchased the Products within Pennsylvania or shipped into Pennsylvania from March 9, 2020 through present.

108. Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof.

109. The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

110. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a. whether Defendant misrepresented material facts concerning the Products;

b. whether Defendant misrepresented material facts concerning the Products in the marketing of every Product;

c. whether Defendant's conduct was unfair and/or deceptive;

d. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Classes;

e. whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;

f. whether Defendant breached express warranties to Plaintiff and the Classes;

g. whether Defendant breached implied warranties to Plaintiff and the Classes; and

h. whether Plaintiff and the Classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

111. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Classes, purchased Defendant's Products in reliance of Defendant's misrepresentations and omissions. Plaintiff sustained damages from Defendant's wrongful conduct.

112. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

113. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

114. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the Classes as a whole.

115. The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*
### (On Behalf of Plaintiff and the Pennsylvania Subclass)

116. Plaintiff repeats and realleges each and every factual allegation contained in the foregoing paragraphs as if fully set forth herein.

117. Plaintiff brings this Count individually and on behalf of the members of the Pennsylvania Subclass.

118. Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

119. Plaintiff and Pennsylvania Subclass Members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

120. Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following: representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v)); representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Cons. Stat. § 201-2(v)(vii)); and advertising its goods and services with intent not to sell them as advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. § 201-2(v)(xxi)).

121. As alleged more fully above, Defendant has violated the Unfair Trade Practices and Consumer Protection Law by misleadingly, deceptively, and falsely representing to Plaintiff and the other members of the Pennsylvania Subclass that the Products contained "100% KONA COFFEE" when they do not contain "100% KONA COFFEE."

122. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

123. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Pennsylvania Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

124. Plaintiff and other members of the Pennsylvania Subclass lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products failed to contain "100% KONA COFFEE" ; (b) they paid a substantial price premium

compared to other food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

125. Plaintiff and the Pennsylvania Subclass seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Classes)**

126. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

127. Plaintiff bring this claim individually and on behalf of the members of the proposed Classes against the Defendant.

128. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Products are "100% KONA COFFEE."

129. Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "100% KONA COFFEE."

130. Defendant made these express warranties regarding the Products' quality, ingredients, and fitness for consumption on its website, in marketing statements, and on the Products' packaging in connection with the sale of the Products.

131. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

132. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

133. The Products do not conform to the express warranty because they do not exclusively contain Kona coffee.

134. Prior to the filing of this complaint, Defendant was provided written notice of these breached warranties via the United States Postal Service in November 2025.

135. In response, Defendant failed to remedy.

136. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and the Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they had known the true facts; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, ingredients, uses, or benefits as promised.

137. Plaintiff, on behalf of herself and the Class Members, demands judgment against Defendant for compensatory damages for herself and each of the other Class Members, as well as attorneys' fees, interest, and costs.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

138. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

139. Plaintiff and members of the Classes conferred a benefit on the Defendant by purchasing the Products.

140. Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable because they were premised on unlawful, deceptive, fraudulent, and misleading conduct.

141. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for its unjust enrichment, as ordered by the Court.

142. Plaintiff, therefore, seeks an order requiring Defendant to make restitution to Plaintiff and other members of the Classes.

**RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as

representatives for the Classes and Plaintiff's counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: May 11, 2026

Respectfully submitted,

**The Keeton Firm LLC**

/s/ Steffan T. Keeton
Steffan T. Keeton
Pa. Id. No. 314635
stkeeton@keetonfirm.com
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Telephone: 1-888-412-5291

**THE MILLS LAW FIRM**
Michael A. Mills*
52D Briar Hollow Lane
Houston, TX 77027
Phone: (713) 882-4915
mickey@millsmediation.com
**pro hac vice* forthcoming

*Counsel for Plaintiff and the Classes*